No. 15-2020

In The
United States Court of Appeals
For The Fourth Circuit

**Curtis Edwin Leyshon**
*Petitioner - Appellant,*

*v.*

**COMMISSIONER OF INTERNAL REVENUE,**
*Respondent - Appellee .*

APPEAL FROM THE TAX COURT OF THE UNITED STATES

**APPELLANT'S BRIEF**

**Petitioner—Appellant**
Curtis Edward Leyshon
915 North Pine Run Road
Boone, North Carolina
828-265-4664 Phone

**Respondent—Appellee**
Clint Aaron Carpenter
U.S. Department of Justice
Tax Division
P.O. Box 502
Washington, D.C. 20044
202-514-4346 Phone
202-514-8456 Fax

## Table of Contents

Table of Contents ............................................................................. i

Table of Authorities ........................................................................ ii

I.  Jurisdiction .................................................................................. 1

    A.  Subject Matter Jurisdiction of the 4th Circuit Court of Appeals Arises under Article III of the Constitution of the United States—Informal Brief for Leyshon and Formal Brief Schedules for Attcorneys. ......................................................... 1

    B.  Subject Matter Jurisdiction. ....................................................... 12

    C.  Appellant Has the Burden of Invoking Subject Matter Jurisdiction. ............ 14

    D.  The Jurisdiction of the Tax Court is the ONLY Remedy Offered by Congress and It Adjudicates "Public Rights" Doctrine, *i.e.* "Internal Revenue Laws." ..... 14

    E.  Federal Courts Are of Limited Jurisdiction in the several States. ................. 16

    F.  Leyshon's Personal Jurisdiction and Status. .................................... 17

    G.  Jurisdicitonal Standing to Sue or Appear in an Article III Court as the C.I.R. Pursuing Nonjudicial issues is Prohibited. .......................................... 19

    H.  There is no Real Case or Controversy for the 4th Circuit To Take "Subject Matter Jurisdiction" of Arising Under Article III. ................................... 20

II.  Statement of the Facts. ................................................................. 21

III.  Statement of the Case. ................................................................ 21

IV.  Summary of the Argument. ......................................................... 22

V.  Argument .................................................................................. 23

    A.  The Jurisdiction Of The Federal United States District Courts and Of the Courts of Appeals Within the Territorial Boundaries of the several States Are Prohibited From Adjudicating Non-judicial issues, But the United States District

Courts and Appeals Court in the District of Columbia Can Adjudicate Article I. ..................................................................................................... 23

B.   *Stare Decisis* and Precedent Binds the USDC and the 4th Circuit on Jurisdiction................................................................................. 29

C.   Only The Supreme Court Can Overrule One Of its Precedents Including Jurisdiction.................................................................................. 32

D.   There is NO Case or Controversy in the USDC............................................ 34

E.   Jurisdiction of USDC is "Public Rights" Doctrine Under the Plenary Power of Congress........................................................................... 36

F.   Tax Court of the ONLY Remedy Offered by Congress and It Adjudicates ONLY "Public Rights" Doctrine........................................................ 38

VI.  Conclusion. ..................................................................................... 41

## Table of Authorities

**Cases**

*Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1182 (10th Cir. 2000) . 13

*American Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2nd Cir. 2015 [May 7th]) ...................................................................................... 20

*Amnesty Int'l,* 133 S.Ct. at 1147 (collecting cases)............................................. 21

*Anastosoff v. United States*, 223 F.3d 898 (8th Cir. 2000) ...................................... 32

*Arewcibo Community Health Care, Inc. v. Commonwealth of Puerto Rico*, 270 F.3d 17 (1st Cir. 2001)........................................................................ 31

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433 (1989) 13, 28

*Arizona v. Rumsey,* 467 U.S. 203, 212, (1984) ..................................................... 31

**Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n,** 430 U.S. 442, 450–51 & nn. 8–9, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977) ........................ 16

*Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n,* 430 U.S. 442, 450–51 & nn. 8–9, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977) (internal quotation marks omitted) ..................................................................................... 37

*Bakelite,* 279 U.S. at 450–51, 49 S.Ct. at 413 ...................................................... 38

*Baltimore & Ohio R. R. Co. v. Interstate Commerce Commission*, 215 U. S. 216, 30 Sup. Ct. 86, 54 L. Ed. 164 ........................................................................... 24

*Basso v. Utah Pwr. & Lt. Co.* 495 F.2d 906, 909 (10th Cir. 1974) ........................ 13

*Biggs v. Meadows*, 66 F.3d 56, 60 4th Cir. 1995) ................................................. 29

*Bowsher v. Synar*, 478 U.S. 714, 761 (1986) ....................................................... 27

*Buckley v. Valeo*, 424 U.S. 1, 123  (1976) ............................................... 10, 20, 22

*Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406 (1932) (*Brandeis, J., dissenting*)................................................................................................... 30

*California Fig Nut. Co. @ 700-701*. ..................................................................... 17

*California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), principles of estoppel do not apply, *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–542, 95 L.Ed. 702 (1951) .............................................. 27

*Citizens United v. Federal Election Commission*, 558 U.S. 310, 377 (2010) ........ 31

*Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1146 (2013), quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (alteration in original) ........................................................................................................... 21

*Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 853-854 (1986) ........................................................................................................... 13

*Conner*, 434 F.3d at 680 (quoting *United States v. Stuart*, 489 U.S. 353, 353, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989) ................................................................. 19

*Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 480 (4th Cir. 2005) .................................................................................... 28

*Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 480 (4th Cir. 2005 ......................................................................................... 28

*Corfield v. Coryell*, 6 F.Cas. 546, 551, 552 (1823) .............................................. 41

*Corfield v. Coryell*, 6 F.Cas. 546, 551, 552 (1823). ............................................. 40

*Crowell v. Benson*, 285 U.S. 22, 50–51, 52 S.Ct. 285, 76 L.Ed. 598 (1932) ... 16, 37

*Crowell v. Crowell*, 285 U.S. 22, 50 (1932) ......................................................... 13

*Crowell*, 285 U.S. at 50–51, 52 S.Ct. at 292 ........................................................ 38

*Crowell,* 285 U.S. at 50–51, 52 S.Ct. at 292; *Bakelite,* 279 U.S. at 450–51, 49 S.Ct. at 413 ......................................................................................................... 15

*Dickerson v. United States*, 530 U.S. 426, 433 (2000) ......................................... 31

*Employers Reinsurance Corp. v. Bryant,* 299 U.S. 374, 382 (1937) .................... 17

*Evans v. Gore*, 253 U.S. 245, 250-251 (1920) ....................................................... 8

*Ex Parte Bollman and Ex Parte Swartwout*, 8 U.S.. 75, 125, 126, 126 (1807).... 7, 8

*Ex parte Siebold*, 100 U. S. 371, 398, 25 L. Ed. 717 ............................................ 24

*Finey v. United States*, 490 U.S. 545, 559 FN3 (1989) ........................................ 28

*Finley v. United States*, 109 S.Ct. 2003, 2012 FN2 (2012) *Stevens, Brennan, Marshall dissenting opinion*; *Verlinder B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 491 (1983) ................................................................................................... 13

*Freytag v. Commissioner of Internal Revenue,* 501 U.S. 868, 891–92, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) .................................................................... 15, 38

*Freytag,* 501 U.S. at 892, 111 S.Ct. 2631 ........................................................... 37

*Gordon v. United States*, 117 U. S. 697, appendix ............................................... 24

*Grandfinanciera v.* Nordberg, 492 U.S. 33, 69 (1989) ........................................ 13

*Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 51 n. 8, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) ............................................................................................. 37

*Groh v. Ramirez*, 540 U.S. 551, 563, 564 (2004) ................................................... 3

*Harlow v. Fitzgerald*, 457 U.S. 800, 818-819 (1982) ............................................. 3

*Harmelin v. Michigan*, 501 U.S. 957, 963 (1991) ................................................. 33

*Harper v. Virginia Department of Taxation*, 509 U.S. 86, 107 (1993) ................. 32

*Hayburn's Case,* 2 Dall. 410, note (1 L. Ed. 436) ................................................. 24

*Hayburn's Case*, 2 U.S. 408 (1792) ......................................................... 10, 20, 22

*Hays v. Hoffman*, 325 F.3d 982, 987 (8th Cir. 2003) ........................................... 14

*Hodgson v. State of Minnesota*, 646 F.Supp. 756, 774 (D.C.Minn. 1986)

............................................................................................................................ 32

*Hohn v. United States*, 524 U.S. 236 (1998) ........................................................ 29

*Hubbard v. United States,* 514 U.S. 695, 711, (1995) ........................................... 31

*Hutto v. Trenton*, 454 U.S. 370, 374 (1991) .......................................................... 34

*In re Oliver*, 333 U.S. 257, 280 (1948) .................................................................. 8

*Insurance Corp. of Ireland, Ltd, et al., v. Compagnie des Bauxites de Guinee*, 102

S.Ct. 2099, 2014 (1982) ..................................................................... 17, 24, 27

*Insurance Corp. of Ireland, Ltd, et al., v. Compagnie des Bauxites de Guinee*, 102

S.Ct. 2099, 2104 (1982) ................................................................................. 13

*Insurance Corp. of Ireland, Ltd, et al., v. Compagnie des Bauxites de Guinee*, 102

S.Ct. 2099, 2105 (1982) ................................................................................. 17

*Johnson v. United* States, 135 S.Ct. 2551, 2563 (2015) ........................................ 29

*Keller v. Potomac Electric Company*, 261 U. S. 428, 440, 442, 443, (1923)... 10, 25

*Keller v. Potomac Electric Power Co. Inc.*, 262 U.S. 428, 442-444 (1923) .......... 23

*Kendall v. United States,* 12 Pet. 524, 619, 9 L. Ed. 1181 ..................................... 23

*Kimble v. Marvel Entertainment*, 135 S.Ct. 2401 [held @ 2404], 2410 (2015)..... 31

*Klien v. United States*, 94 F.Supp..2d 838 (S.C. Mich 2000) ................................ 13

*Klien v. United States*, 94 F.Supp.2d 838 (S.D.Mich. 2000 citing *Samuels, Kramer*

    *& Co. v. C.I.R.*, 930 F.2d 975, 992 (2nd Cir. 1991) ........................................... 15

*Klien v. United States*, 94 F.Supp.2d 838 (S.D.Mich. 2000) ................................ 38

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citation omitted) 36

*Kuretski v. C.I.R.*, 755 F.3d 929 (D.C. Cir. June 20, 2014) .................................. 26

*Kuretski v. C.I.R.*, 755 F.3d 929, 939 (D.C. Cir. 2014) ....................................... 13

*Kuretski v. C.I.R.*, 755 F.3d 929, 939, 940 (D.C. Cir. 2014) ......................... 16, 36

*Kuretski v. C.I.R.*, 755 F.3d 929, 939, 940 (D.C.Cir. 2013) ................................ 23

*Lance v. Coffman*, 549 U.S. 437, 439 (2007) ....................................................... 35

*Landes v. Brant*, 51 U.S. 348, 364 (1850) (Public land) ...................................... 36

*Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) ............................... 14

*Leary v. Gledhill*, 84 A.2d 725, 728 (Sup.Ct. NJ 1951) ......................................... 3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) .................................... 35

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 561 (1992)............................ 34

*m. Ins. Co. v. Canter*, 26 U.S. (1 Pet.) 511, 546, 7 L.Ed. 242 (1828) ................... 37

*Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28

    L.Ed. 462 (1884), **FN9**................................................................................. 28

*Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) .................. 32

*McMellon v. United States,* 4th Cir. 2004) ................................................... 29

*Mistretta v. United States,* 488 U.S. 361, 385 (1989)............................... 10, 20, 22

*Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 149 (2010) ...................... 21

*Morrison v. Olson,* 487 U.S. 654, 677-78 (1988)..................................... 10, 20, 22

*Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 284, 15 L.Ed. 372 (1856) .......................................................................... 15, 38

***Murray's Lessee v. Hoboken Land & Improvement Co.****,* 59 U.S. 272, 284, 18 How. 272, 15 L.Ed. 372 (1856).................................................................. 16, 37

*Muskrat v. United States,* 219 U. S. 346 (1902)..................................................... 11

*Muskrat v. United States,* 219 U. S. 346, 31 Sup. Ct. 250, 55 L. Ed. 246.............. 24

*Muskrat v. United States,* 219 U.S. 346, 353, 356 (1902) ......................... 10, 20, 22

*National Mutual Ins. Co. v. Tidewater Transfer Co.,* 337 U.S. 582, 646-655 (1949)

    *Fankfurter, J. dissenting* ................................................................. 13

*New Horizon of New York LLC v. Jacobs,* 231 F.3d 143, 150 (4th Cir. 2000) ....... 28

*Northbrook Nat. Ins. Co. v. Brewer,* 493 U.S. 6, 8 (1989) ................................... 14

*Nucor Corp. v. Nebraska Public Power Dist,* 891 F.2d 1343, 1346 (8th Cir. 1989)

    .......................................................................................................... 14

*Omni Capital Intern., Ltd, v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104 (1987). 13, 28

*Orquera v. Ashcroft*, 357 F.3d 413, 416 (4th Cir. 2003) ........................................ 28

*Patterson v. McLean Credit Union*, 491 U.S. 164, 164, 172 (1989)..................... 30

*Payne v. Tennessee*, 501 U.S. 808, 827-828 (1991).............................................. 29

*Payne v. Tennessee*, 501 U.S. 808, 828 (1991) ...................................................... 30

*Pearson v. Callahan*, 555 U.S. 223, 233 (2009); *State Oil Co. v. Khan*,

    522 U.S. 3, 20 (1997) ................................................................................... 30

*People's Bank v. Calhoun*, 102 U.S. 256, 260-261 (1880).................................... 13

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 217 *et. seq.* (1995)............ 10, 20, 22

*Postum Cereal Co, Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701 (1927. 27

*Postum Cereal Co. Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701 (1926)

    ..................................................................................................... passim

*Potter v. Norwest Mortg., Inc.*, 329 F.3d 608, 611 (8th Cir. 2003)........................ 13

*Prentis v. Atlantic Coast Line Company*, 211 U. S. 210, 225, 226, (1908)...... 10, 25

*Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 486 (1989) 33

*Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1558 (8th Cir. 1996) .............................. 14

*Ruhrgass AG v. Marathon Oil Co. et al.*, 526 U.S. 574, 575 (1999) ..................... 17

*Samuels, Kramer & Co. v. C.I.R.*, 930 F.2d 975, 992 (2nd Cir. 1991).............. 14, 38

*Samuels, Kramer & Co. v. Comm'r*, 930 F.2d 975, 992 (2d Cir.1991) ................. 37

*Samuels, Kramer & Co. v. Commissioner of Internal Revenue*, 930 F.2d 975, 991–

    92 (2d Cir.1991)....................................................................................... 15, 39

ix

*Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 511 (1900) ................................... 36

*St. Joseph Stock Yards Co. v. United States,* 298 U.S. 38, 94 (1936) (Stone and

    Cardozo, JJ., concurring in result) ................................................................... 30

*State of Georgia v. Stanton*, 73 U.S. 50, 60 (1867) ............................................. 34

*State of Mo. ex rel. Missouri Highway and Transp. Com'n v. Cuffley*, 112 F.3d

    1332, 1334 (8th Cir. 1997) ............................................................................. 14

*State of Ohio v. Davis*, 584 N.E.2d 1192, 1196 (Sup.Ct. Ohio 1992) ...................... 3

*State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ................................................. 29

*Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 102 (1998) .............. 35

*Sunshine Haven Nursing Operations, LLC v. U.S. Dept. of HHS, Centers Medicare*

    *& Medicaid Serv.*, 742 F.3d 1239, 1249 (10th Cir. 2014) ................................... 13

*Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 589, 105 S.Ct. 3325,

    87 L.Ed.2d 409 (1985) (quoting *Northern Pipeline,* 458 U.S. at 68, 102 S.Ct.

    2858) .............................................................................................................. 37

*Thomas v. Union Carbide Agricultural Products Co,* 473 U.S. 568, 589 (1985) .. 13

*Thurston Motor Lines v. Rand*, 460 U.S. 533, 535 (1983) ..................................... 33

*Thurston Motor Lines v. Rand*, 460 U.S. 533, 535 (1983) (per curiam) ................ 32

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* [460 U.S. 533, 535, 103 S.Ct.

    1343, 1344, 75 L.Ed.2d 260] (1983) ................................................................ 33

*Tuck v. United States Auto. Ass'n*, 859 F.2d 842 (10th Cir. 1988) (quoting Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir.1974)), cert. denied, 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989) ......................................... 14

*United States ex rel Ketroser v. Mayo Foundation* 729 F.3d 825, 827 (8th Cir. 2013)................................................................................................................. 14

*United States v. Anthony*, 24 F.Cas. 829, 829, 830 (Cir.Ct. N.D.N.Y. 1873) ........ 40

*United States v. Anthony*, 24 F.Cas. 829, 830 (Cir.Ct. N.D.N.Y. 1873) ............... 40

*United States v. Barnett*, 578 F.3d 600, 602 (8th Cir. 2009) .................................. 32

*United States v. Bisceglia,* 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975) ............................................................................................................................. 18

*United States v. Cardales-Luna,* 633 F.3d 731, 735 (1st Cir. 2011)........ 29

*United States v. Clark,* 865 F.2d 1433, 1441 (4th Cir. 1989) ................................ 29

*United States v. Ferreira,* 13 How. 40, 52, 14 L. Ed. 42....................................... 24

*United States v. Ferreira,* 54 U.S. 40, 52-53 (1851) ................................. 10, 20, 22

*United States v. Goldsmith*, 272 F.Supp. 924, 927 (E.D. N.Y. 1967).................... 18

*United States v. Goldsmith*, 272 F.Supp. 924, 927 (E.D.N.Y. 1967)..................... 41

*United States v. International Business Machines Corp.,* 517 U.S. 843, 856, (1996) ............................................................................................................................. 31

*United States v. International Business Machines Corp.*, 517 U.S. 843, 856, 116 S.Ct. 1793, 135 L.Ed.2d 124 (1996), quoting *Payne v. Tennessee,* 501 U.S. 808, 842, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (Souter, J., concurring) .............. 32

*United States v. O'Shea*, 662 F.Supp.2d 535, (S.D. West Va. 2009)..................... 18

*United States v. O'Shea*, 662 F.Supp.2d 535, 539 (S.D.W.Va. 2009) .................. 41

*v. United States*, 219 U. S. 346 (1902)................................................................. 25

*Valley Forge Christian Coll. v. Americans United/*or *Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982) (quoting *United States v. Students Challenging Regulatory Agency Procedures* (SCRAP), 412 U.S. 669, 687 (1973) ............................................................................................................................. 35

*Vasquez v. Hillery*, 474 U.S. 254, 254, 265-266 (1986) ....................................... 30

*Vasquez v. Hillery*, 474 U.S. 254, 265 (1986) ............................................. 30

*Vermont Agency of Natural Res. v. US ex rel. Stevens*, 529 U.S. 765, 771 (2000) 35

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 779 (2000)....................................................................................................... 17

*Wallace v. Jaffree*, 432 U.S. 38, FN 26................................................................. 33

*Warth v. Seldin*, 422 U.S. 490, 499 (1975) ......................................................... 35

*Weems v. United States*, 217 U.S. 349, 386 (1910) (Territories – Philippines)...... 36

*Westerfeld v. Independent Processing, LLC*, 621 F.3d 819, 823 (8th Cir. 2010)... 14

*Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ................................................ 35

*Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998) ........... 13, 28

*Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990) .................................................. 14

## Statutes

14 Stat. 27 memorialized in the 14th Amendment ................................................. 39

26 U.S.C. 7491 ....................................................................................................... 19

28 U.S.C. § 1331—Federal Question ....................................................................... 1

28 U.S.C. § 2072 ..................................................................................................... 4

**28 U.S.C. § 2072**, 102 Stat. 4648 (1988) ............................................................. 4

28 U.S.C. § 22 ....................................................................................................... 19

28 U.S.C. § 723 ....................................................................................................... 4

48 Stat. 1064 ........................................................................................................... 4

Revenue Act of 1924, ch. 234, § 900(a), (k), 43 Stat. 253, 336, 338 .................... 18

Revenue Act of 1942, ch. 619, § 504(a), 56 Stat. 798, 957 .................................. 18

## Other Authorities

**A1—Informal Brief** ............................................................................................... 6

**A2—Informal Briefing** ....................................................................................... 12

**A3—Formal Briefing** .................................................................................... 11, 12

**Appendix 1—Informal Brief Fourth Circuit ("A1—Informal Briefing")** ......... 5

**Appendix 2—Petition of Tax Court ("A2—Petition")** ....................................... 5

**Appendix 3—Formal Brief Schedule Requirements ("A—Formal Briefing")** 11

Appendix 4—Sworn Affidavit of Political Status, Citizenship, and Allegiance in the Public Record Watauga County, North Carolina Doc. No: 639426 Bk 1818, Pages 244-247 ("A4—Leyshon Status") ...................................... 18

Appendix 5—Voter Registration in North Carolina as a Qualified Elector ("A5—Qualified Elector) ........................................................ 18

*Clinton v. Klayman*, 9-15-cv-80388 S.D.Fla. ............................................. 20

Federal Rules of Appellate Procedure ("FRAP") Rule 47(a) ................................. 4

Hosea 4: 6 .......................................................................... 2

John 8:22 ........................................................................... 1

Local Rule 34(a) ..................................................................... 4

Opposition to "COMMISSIONER'S RESPONSE TO APPELLANT'S MOTION FOR FORMAL BRIEFING SCHEDULE" in the 4th Circuit Court of Appeals filed on October 20, 2015 ................................................ 2

**public rights doctrine** reflects simply a pragmatic understanding that, when **Congress selects a quasi-judicial method of resolving matters** ..................... 37

Rule 47(a) ......................................................................... 4

## Constitutional Provisions

Art. III, § 1 ....................................................................... 27

Art. III, § 2, cl. 1 ................................................................ 27

Article I .......................................................................... 24

**Article I forums could have been conclusively determined by the executive or legislative branches in the first instance** ......................................................... 15

Article I Section 8 clause 17 .......................................................................... 24

**Article I to <u>adjudicate federal rights</u>** ...................................................... 16

Article III ..................................................................................................... 28

Article III § 2 ......................................................................................... passim

Article III § 2 Clause 1 ................................................................................. 26

Article III Court .......................................................................................... 24

Article III jurisdiction .................................................................................. 29

Article III of the Constitution confines the "judicial Power" of the United States to "**Cases**" and "**Controversies**." Constitution of the United States Article III, § 2 ...................................................................................................................... 35

**Constitution (clause 17, section 8, article 1) Congress is given** power '**to exercise exclusive legislation in all cases whatsoever, over**' the District of Columbia. .................................................................................................... 23

Constitution of North Carolina ..................................................................... 39

thirteenth, fourteenth and fifteenth amendments .......................................... 40

# I. Jurisdiction

## A.  Subject Matter Jurisdiction of the 4th Circuit Court of Appeals Arises under Article III of the Constitution of the United States—Informal Brief for Leyshon and Formal Brief Schedules for Attcorneys.

a.  Jurisdiction for the 4th Circuit Court of Appeals arises under Article III § 2—"The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States" that is codified in 28 U.S.C. § 1331—Federal Question on the issues of "Laws of the United States;" and, Jurisdiction for the 4th Circuit Court of Appeals is in 28 U.S.C. § 1291—Final Decisions of the district court[1]—"Laws of the United States" and "Article III § 2" for important controlling questions of law as the 4th Circuit Court of Appeals is within the several States, being a Court of the United States of limited jurisdiction precluded from administrative or legislative function which are not properly judicial[2], which does not apply to the Courts of the United States only in the District of Columbia.

b.  Leyshon has relied upon **FIRST**: **"And ye shall know the truth [knowledge], and the truth shall make you free."** John 8:22; and, **SECOND: "My**

---

[1] The finality rule granting federal Courts of **Appeals** jurisdiction of **appeals** from all final decisions of the district courts applied to review of decisions by the **Tax Court**. *Cheng v. C.I.R.*, 878 F.2d 306 (9th Cir. 1989).

[2] *Postum Cereal Co. Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701 (1926),

**People are destroyed for lack of knowledge: because thou hast refused knowledge,** I will also refuse thee, that thou shalt be no Priest to me: and seeing thou hast forgotten the Law of thy God, I will also forget thy children." Hosea 4: 6.

c. This 4th Circuit Court of Appeals presents itself as a bona fide Article III Court by its holdings and the 4th Circuit Court of Appeals did take my five hundred dollars with the understanding that it was a bona fide Court of the United States arising under Article III of the Constitution, *i.e.*, "[T]he judicial Power shall extend to all Cases, in Laws and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority."

d. This Court shall take judicial Notice of Leyshon's "**Opposition to "COMMISSIONER'S RESPONSE TO APPELLANT'S MOTION FOR FORMAL BRIEFING SCHEDULE"** in the 4th Circuit Court of Appeals filed on October 20, 2015 that was relabeled by the 4th Circuit as a "**REPLY",** which has not been addressed as moot or otherwise to date.

Leyshon has found out since the Notice of Appeal was filed with the 4th Circuit Court of Appeals that it is NOT a bona Court of the United States arising under Article III within one of the several States, but is in fact **knowingly and intentionally a chameleon Court** acting as an Article I Court especially against Leyshon, being one the citizens of the several States who is without Assistance of Counsel or being represented by **Bar Controlled Attorney.**

2

e. And further, this 4th Circuit Court of Appeals is intentionally limiting Leyshon to **the subject matter jurisdiction, which is constitutionally confined to and Authorized under the Constitution of the United States to only a United States District Court in the District of Columbia and a District Court of Appeals for the District of Columbia within the territorial boundaries of the District of Columbia interpreting and applying Article I issues especially Article I Section 8 Clause 18**.

f. And further, the Fourth Circuit Court of Appeals Judges of the 4th Circuit are deemed to know the Laws of the United States[3] therein flows *a fortioria* that the actions by the Judges of the 4th Circuit Court of Appeals are both knowingly and intentionally acting as an Article I court and to deny Leyshon "Due Process of Law" arising under the Constitution of North Carolina with its Bill of Rights and Laws of North Carolina, the Constitution of the United States with its Bill of Rights and Laws of the United States.

g. And further, as the Judges of the 4th Circuit Court of Appeals proffer and

---

[3] *Groh v. Ramirez*, 540 U.S. 551, 563, 564 (2004) "If the law was clearly established . . . a reasonably competent public official should know the law governing his conduct." Citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818-819 (1982); *State of Ohio v. Davis*, 584 N.E.2d 1192, 1196 (Sup.Ct. Ohio 1992) "**Judges**, unlike juries, **are presumed to know the law**."; *Leary v. Gledhill*, 84 A.2d 725, 728 (Sup.Ct. NJ 1951) "A court will in general take judicial notice of and apply the law of its own jurisdiction without pleading or proof thereof, the judges being deemed to know the law or at least where it is to be found."

3

approve of the Local Rules of Court for the 4th Circuit understanding and possessing full knowledge thereof of 48 Stat. 1064 "Said rules shall neither abridge, enlarge, nor modify the substantive rights of any litigant. They shall take effect six months after their promulgation, and **thereafter all laws in conflict therewith shall be of no further force and effect of law**" was codified at 28 U.S.C. § 723, and then amended to **28 U.S.C. § 2072**, 102 Stat. 4648 (1988). Therein clothed in the Federal Rules of Appellate Procedure ("FRAP") Rule 47(a)– –"28 U.S.C. § 2072" and Rule 47(a) we find using the concerted efforts of the judges of the 4th Circuit Court of Appeals that have knowingly and intentionally conjured up the incantation approving and enacting the Local Rule 34(a) in an attempt to validate with some alleged Authority that the 4th Circuit Court of Appeals can constitutional limited **ONLY (not Attorneys)** "Pro Se(s)" to the "subject matter jurisdiction" and the Venue of Article I Section 8 Clause 17, which is limited strictly to the Courts of the United States **within** the District of Columbia as held in *Postum Cereal Co. Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701 (1926), to wit:

> [A]nd **so may vest courts of the District with <u>administrative or legislative functions</u> which are not properly judicial, <u>it may not do so with this court, or any federal court established under article 3 of the Constitution.</u>** Of the jurisdiction of this court, we said, at page 444 of 261 U. S. (43 S. Ct. 449):
>
> '<u>**Such legislative or administrative jurisdiction, it is well settled, cannot be conferred on this court either directly or by appeal.**</u>

h. Then the Fourth Circuit Court of Appeals in this **Informal Brief schedule as evidenced in Appendix 1—Informal Brief Fourth Circuit ("A1—Informal Briefing") is limited strictly to Leyshon and other "pro se" litigants**, we find the following instructions approved by the 4th Circuit Court of Appeals Judges required, to wit:

> 3. **Issues for Review** Use the following spaces to set **forth the facts** and argument in support of the issues you wish the Court of Appeals to consider. The **parties may cite case law, but citations are not required.**
>
> **Issue 1.**
> **Supporting Facts and Argument.**
> **Issue 2.**
> **Supporting Facts and Argument.**
> **Issue 3.**
> **Supporting Facts and Argument.**
> **Issue 4.**
> **Supporting Facts and Argument**
> **4. Relief Requested** Identify the precise action you want the Court of Appeals to take:
> **5. Prior appeals (for appellants/petitioners only)**

i. This "Informal Brief" parallels and duplicates the "Petition of Tax Court" evidenced by **Appendix 2—Petition of Tax Court ("A2—Petition")** to the Article I Independent Agency Tax Court of the United States with number 5 being "**Explain why you disagree [argument]** with the IRS determination in this case"

and number 6 "State the **facts** upon which you rely" evidenced by **a Petition of Tax Court**.

j. And in **A1—Informal Brief,** "The **parties** **may** **cite case law, but citations are not required,"** therein precluding all of the "*stare decisis*" and precedents of the Courts of the United States arising under Article III.

k. Therefore with Clear and Convincing Evidence provided by the Fourth Circuit Court of Appeals and the Judges of the Fourth Circuit Court of Appeals, therein Leyshon in pursuit of the Truth does hereby further identify the Judges as "4th Circuit Inquisitors," and the Fourth Circuit Court of Appeals as "the Inquisitorial 4th Circuit."

l. And further, with the irrefutable evidence and confirmed approval of these Inquisitorial 4th Circuit Judges of said irrefutable evidence; therein, Leyshon must in the interest of **Knowledge and use of said Knowledge to discern the Truth with the Truth shall set you free** denote and identify all of the 4th Circuit Inquisitorial Judges to include the following attributes when referring the "4th Circuit Inquisitors" but not limited to the following, to wit:

(1) Liars; and,

(2) Domestic Enemies to our Republic; and,

(3) Inquisitors,

(4) That these 4th Circuit Inquisitors that all are knowingly and intentionally

6

committing TREASON[4] by waging War against the "Laws of the United States;" and,

(5) That these 4th Circuit Inquisitors since 1948, but not limited to this timeframe by and with the Approval of the alleged Justices of the Supreme

---

[4] *Ex Parte Bollman and Ex Parte Swartwout*, 8 U.S.. 75, 125, 126, 126 (1807)— "[*125] <u>As there is no crime which can more excite and agitate the passions of men than treason, no charge demands more from the tribunal before which it is made a deliberate and temperate inquiry. Whether this inquiry be directed to the fact or to the law, none can be more solemn, none more important to the citizen or to the government; none can more affect the safety of both.</u> * * * To prevent the possibility of those calamities which result from the extension of treason to offences of minor [*126] importance, that great fundamental law which defines and limits the various departments of our government has given a rule on the subject both to the legislature and the courts of America, which neither can be permitted to transcend.

<u>'Treason against the United States shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort</u>.' * * * [*128] Judge Chase, in the trial of Fries, was more explicit.

He stated the opinion of the court to be, <u>'that if a body of people conspire and meditate an insurrection to resist or oppose the execution of any statute of the United States by force, they are only guilty of a high misdemeanor; but if they proceed to carry such intention into execution by force, that they are guilty of the treason of levying war; and the *quantum* of the force employed, neither lessens nor increases the crime: whether by one hundred, or one thousand persons, is wholly immaterial.</u>' 'The court are of opinion,' continued Judge Chase, on that occasion, <u>'that a combination or conspiracy to levy war against the United States is not treason, unless combined with an attempt to carry such combination or conspiracy into execution; some actual force or violence must be used in pursuance of such design to levy war; but it is altogether immaterial whether the force used is sufficient to effectuate the object; any force connected with the intention will constitute the crime of levying war.</u>'

Court of the United States since 1948, but not limited to this timeframe, are

supporting this **TREASON**[5] have intentionally conjured up the incantation

approving this Treason as merely "experimentation," confirming that this

"experimentation" "in spite of the absolutism of the constitutional

governments,' their ideas and processes of civil justice[6]," *i.e.*" is outside the

limited grants of Authority from We the People of the several States secured

in the constitutions of the several States with their Bill of Rights and the

binding laws of the several States; and, also outside the limited grants of

Authority from We the People of the several States secured in the

Constitution of the United States and its Bill of Rights and the Laws of the

United States.

(6)   The 4th Circuit Inquisitors are a corrupt and dependent Judiciary that

Chief Justice Marshall warned us about evidenced in *Evans v. Gore*, 253

U.S. 245, 250-251 (1920) to wit:

At a later period John **Marshall**, whose rich experience as lawyer,
legislator, and Chief Justice enabled him to speak as no one else
could, tersely said (Debates Va. Conv. 1829-1831, pp. 616, 619):

'Advert, sir, **to the duties of a judge**. He has to pass between the
government and the man whom that government is prosecuting;

---

[5] See FN 4—*Ex Parte Bollman and Ex Parte Swartwout*, 8 U.S.. 75, 125, 126, 126
(1807).

[6] *In re Oliver*, 333 U.S. 257, 280 (1948).

between the most powerful individual in the community, and the poorest and most unpopular. It is of the last importance, that in the exercise of these duties he should observe the utmost fairness. Need I press the necessity of this? Does not every man feel that his own personal security and the security of his property depends on that fairness? **The judicial department comes home in its effects to every man's fireside: it passes on his property, his reputation, his life, his all. Is it not to the last degree important that he should be rendered perfectly and completely independent, with nothing to influence or control him but God and his conscience? * * * I have always thought, from my earliest youth till now, that the [*251] greatest scourge an angry Heaven ever inflicted upon an ungrateful and a sinning people was an ignorant, a corrupt, or a dependent judiciary.**'

m.    As evidenced the 4th Circuit Inquisitors are acting with "experimentation," powers (sic) *ibid.*; and then are not Independent Article III Judges.    But the 4th Circuit Inquisitors are subject to political environments, subject to *ultra vires* judicial environments, subject to all agencies and their regulations without exception and subject to executive orders requiring this "experimentation" perceived power (sic) or presumed instructions that are received from whomever.

Then the 4th Circuit Inquisitors with their own unlimited "experimentation" powers (sic) proceeds at "its own discretion" with certain cases **exactly like the United States District Court and District Court of Appeals for the District of Columbia with the territorial boundaries of the District of Columbia,** *ibid.*, *Postum,* "[A]nd **so may vest courts of the District with <u>administrative or legislative functions</u> which are not properly judicial, <u>it may not do so with this</u>**

9

**court, or any federal court established under article 3 of the Constitution.**" Of course this has been prohibited over and over by the holdings in the Supreme Court of the Untied States on Agencies issues starting with *Hayburn's Case*, 2 U.S. 408 (1792); *United States v. Ferreira*, 54 U.S. 40, 52-53 (1851); *Muskrat v. United States*, 219 U.S. 346, 353, 356 (1902); *Buckley v. Valeo*, 424 U.S. 1, 123 (1976); *Mistretta v. United States*, 488 U.S. 361, 385 (1989); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 217 *et. seq.* (1995); *Morrison v. Olson*, 487 U.S. 654, 677-78 (1988).

n. This absolute prohibition of *ultra virus* actions of a bona fide Article III Court of United States within the several States is clearly held in *Postum Cereal Co. Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701 (1926), to wit:

> The distinction between the jurisdiction of this court which is confined to the hearing and decision of cases in the **constitutional sense and that of administrative action and decision, power for which may be conferred upon courts of the District is shown in the case** of *Keller v. Potomac Electric Company*, 261 U. S. 428, 440, 442, 443, (1923). There it is pointed out that, while Congress in its constitutional exercise of exclusive legislation over the District may clothe the courts of the District, not only with the jurisdiction and powers of the federal courts in the several states, but also with such authority as a state might confer on her courts (*Prentis v. Atlantic Coast Line Company*, 211 U. S. 210, 225, 226, (1908)), and **so may vest courts of the District with administrative or legislative functions which are not properly judicial, it may not do so with this court, or any federal court established under article 3 of the Constitution.** Of the jurisdiction of this court, we said, at page 444 of 261 U. S. (43 S. Ct. 449):
>
> '**Such legislative or administrative jurisdiction, it is well settled,**

**cannot be conferred on this court either directly or by appeal.** The latest and fullest authority upon this point is to be found in the opinion of Mr. Justice Day, speaking for the court in *Muskrat v. United States*, 219 U. S. 346 (1902). The principle there recognized and enforced on reason and authority is that the jurisdiction of this court and of the inferior courts of the United States ordained and established by Congress under and by virtue of the third article of the Constitution is limited to cases and controversies in such form that the judicial power is capable of acting on them, and does not extend to an issue of constitutional law framed by Congress for the purpose of invoking the advice of this court **without real parties or a real case**, or **to administrative or legislative issues or controversies.**

o.  Now only Attorneys are Allowed to Use the Formal Briefing schedule evidenced by **Appendix 3—Formal Brief Schedule Requirements ("A—Formal Briefing").**

p.  **NOTE:**    In the **A3—Formal Briefing,** we find that a "Table of Authorities" is REQUIRED for  "All briefs (**cases** alphabetically arranged, **statues** and **other authorities** with references to the page of the brief where they are cited."

q.  Now in the "Informal Briefing" you are not required and there is there any provision provided for relying upon the *stare decisis* and precedents in the Cases of the Courts of the United States arising under Article III, no provision for the "statues," *i.e.*, the Laws of the United States as they are prohibited in the Article I Tax Court of the United States.

r.   Therefore only in the Formal Briefing Schedule is *state decisis*, precedents, Statutes of the United States adjudicated and used arising under Article

III being a *sine qua non* of Due Process of Law. This was being denied to Leyshon until he complaint and **ASKED PERMISSION via a Motion to enter into the hallowed Article III jurisdiction populated only by Bar Attorneys.**

s.    In the **A3—Formal Briefing** for Attorneys, there is a mandatory jurisdictional statement required (subject matter and appellate jurisdiction) that isn't used or required in the **A2—Informal Briefing.** This lack of "subject matter jurisdiction" and "appellate jurisdiction" would be laughable if this wasn't so serious.    Remember that these 4th Circuit Inquisitors approved this intentionally and knowingly.

t.  In the Briefing ORDER of a Fourth Circuit Case using the Formal Briefing Schedule we find "[F]ailure to file a response brief **will result in loss of the right to be heard at oral argument and may lead to imposition of sanctions if counsel has failed to comply with the court's directives**", which in the "Informal Briefing" a Response is "permitted" as is a Reply "permitted."

**B.  Subject Matter Jurisdiction.**

a.  Article III § 2, *supra*, does not include the Tax Court with its decisions and its "public rights[7]" conclusively determined by the Executive and Legislative

---

[7] *Samuels, Kramer & Co. v. C.I.R.*, 930 F.2d 975, 992 (2nd Cir. 1991) " **Public rights are those rights that arise "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments."** citing

Branches."[8]

b. And, with Decisions of the Supreme Court of the United States and the Fourth Circuit, as follows—If a Case is not within one of the specified categories arising under Article III, neither Congress nor the parties may authorize a federal court to decide the Case, including this Court if it is forbidden by Congress.[9]

c. "Subject Matter Jurisdiction" that is Not in the Record must be raised by the Court de novo, the Subject Matter defect can't be waived or ignored by the Court and it can't be Waived by the Parties.[10]

---

*Crowell v. Crowell,* 285 U.S. 22, 50 (1932).

[8] *Thomas v. Union Carbide Agricultural Products Co,* 473 U.S. 568, 589 (1985); *Grandfinanciera v. Nordberg,* 492 U.S. 33, 69 (1989); *Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 853-854 (1986); *Kuretski v. C.I.R.,* 755 F.3d 929, 939 (D.C. Cir. 2014); *Klien v. United States,* 94 F.Supp..2d 838 (S.C. Mich 2000).

[9] *Finley v. United States,* 109 S.Ct. 2003, 2012 FN2 (2012) *Stevens, Brennan, Marshall dissenting opinion; Verlinder B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 491 (1983); *National Mutual Ins. Co. v. Tidewater Transfer Co.,* 337 U.S. 582, 646-655 (1949) *Fankfurter, J. dissenting; Sunshine Haven Nursing Operations; LLC v. U.S. Dept. of HHS, Centers Medicare & Medicaid Serv.,* 742 F.3d 1239, 1249 (10th Cir. 2014); *Adams v. Reliance Standard Life Ins. Co.,* 225 F.3d 1179, 1182 (10th Cir. 2000); *Basso v. Utah Pwr. & Lt. Co.* 495 F.2d 906, 909 (10th Cir. 1974).

[10] *Wisconsin Dept. of Corrections v. Schacht,* 524 U.S. 381, 389 (1998); *Insurance Corp. of Ireland, Ltd, et al., v. Compagnie des Bauxites de Guinee,* 102 S.Ct. 2099, 2104 (1982); *People's Bank v. Calhoun,* 102 U.S. 256, 260-261 (1880); *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 433 (1989); *Omni Capital Intern., Ltd, v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104 (1987); *Potter v. Norwest Mortg., Inc.,* 329 F.3d 608, 611 (8th Cir. 2003); *State of Mo. ex rel. Missouri Highway and Transp. Com'n v. Cuffley,* 112 F.3d 1332, 1334 (8th Cir.

d. The Case must be dismissed at any state of the proceedings in which it becomes apparent that the subject matter jurisdiction is lacking.[11]

## C. Appellant Has the Burden of Invoking Subject Matter Jurisdiction.

a. The Appellant (Leyshon) has the burden of invoking Subject Matter Jurisdiction of the Federal Courts, which has arising under only Article III and 28 U.S.C. § 1331 that must be on the record.[12]

## D. The Jurisdiction of the Tax Court is the ONLY Remedy Offered by Congress and It Adjudicates "Public Rights" Doctrine, *i.e.* "Internal Revenue Laws."

a. The "venue" and the "jurisdiction" of the Tax Court of the United States is under the "public rights" doctrine and this is well-settled that the Tax Court adjudicates "public rights" as evidenced in *Samuels, Kramer & Co. v. C.I.R.*, 930 F.2d 975, 992 (2nd Cir. 1991), to wit:

---

1997) "Nevertheless, subject-matter jurisdiction cannot be waived, and it is our duty to raise the issue sua sponte.;" *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990); *Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1558 (8th Cir. 1996) "[T]his court's subject matter jurisdiction and the exercise of judicial power cannot be controlled by the desires of the parties;"

[11] *Tuck v. United States Auto. Ass'n*, 859 F.2d 842 (10th Cir. 1988) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974)), *cert. denied*, 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989); *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[12] *Northbrook Nat. Ins. Co. v. Brewer*, 493 U.S. 6, 8 (1989); *United States ex rel Ketroser v. Mayo Foundation* 729 F.3d 825, 827 (8th Cir. 2013); *Hays v. Hoffman*, 325 F.3d 982, 987 (8th Cir. 2003); *Westerfeld v. Independent Processing, LLC*, 621 F.3d 819, 823 (8th Cir. 2010); *Nucor Corp. v. Nebraska Public Power Dist*, 891 F.2d 1343, 1346 (8th Cir. 1989).

14

The **Tax Court is the classic example of a forum that adjudicates "public rights**." The relationship between the government and taxpayer plainly gives rise to public rights and we have no doubt that the resolution of such disputes can be relegated to a non-Article III forum. *Crowell,* 285 U.S. at 50–51, 52 S.Ct. at 292; *Bakelite,* 279 U.S. at 450–51, 49 S.Ct. at 413;*Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 284, 15 L.Ed. 372 (1856).

b.   The Tax Court adjudicates "federal rights" under the "public rights"

doctrine as evidenced in *Klien v. United States*, 94 F.Supp.2d 838 (S.D.Mich. 2000

citing *Samuels, Kramer & Co. v. C.I.R.*, 930 F.2d 975, 992 (2nd Cir. 1991), to wit:

First, the vast majority of cases cited by the government are decisions by the Tax Court. Despite performing exclusively judicial functions akin to those of an Article III federal district court (albeit, solely in the **realm of taxation**), the **Tax Court is an Article I court.** *See Freytag v. Commissioner of Internal Revenue,* 501 U.S. 868, 891–92, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991). Tax Court judges lack life tenure; their salaries may be diminished; and they may be removed by the President for cause. *Id.* at 912, 111 S.Ct. 2631 (Scalia, J. concurring). **The Tax Court is a classic example of a congressionally created forum within the executive branch designed to <u>adjudicate "public rights.</u>"** *Samuels, Kramer & Co. v. Commissioner of Internal Revenue,* 930 F.2d 975, 991–92 (2d Cir.1991) "Public rights" are: [t]hose rights that arise "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments."
* * * * * *
The relationship between the government and taxpayer plainly gives rise to public rights and we have no doubt that the resolution of such disputes can be relegated to a non-Article III forum.
The "public rights" doctrine rests on the premise that **any matters subject to adjudication in Article I forums could have been conclusively determined by the executive or legislative branches in the first instance** ... Given the fact intensive nature of tax disputes, resolution of such claims would ordinarily be left to the executive.
* * * * * *

15

> **[L]egislative courts, such as the Tax Court, share many of the characteristics of administrative agencies. We believe that the work performed by legislative courts and adjudicatory agencies cannot be distinguished. Both are bodies created by Congress under Article I to <u>adjudicate federal rights</u>** and both lack the requisites of Article III status. From the perspective of Article III, there is no difference in constitutional principle between legislative courts and administrative agencies ... Despite several differences in both appearance and operation, their work cannot be functionally or theoretically distinguished.

d.    The Commissioner of Internal Revenue Service ("C.I.R.") claims jurisdiction as an independent agency of the Tax Court of the United States for the "internal revenue" See *Kuretski v. C.I.R.*, 755 F.3d 929, 939, 940 (D.C. Cir. 2014) "It is "settled" that the category of **public rights** includes the matters of "**internal revenue**" [internal revenue laws] and "**taxation**" citing *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n,* 430 U.S. 442, 450–51 & nn. 8–9, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977) (internal quotation marks omitted); *see Crowell v. Benson,* 285 U.S. 22, 50–51, 52 S.Ct. 285, 76 L.Ed. 598 (1932); <u>***Murray's Lessee v. Hoboken Land & Improvement Co.***</u>, 59 U.S. 272, 284, 18 How. 272, 15 L.Ed. 372 (1856)."

## E.  Federal Courts Are of Limited Jurisdiction in the several States.

a.  Federal Courts are courts of limited jurisdiction[13] and the Federal Courts within the territorial boundaries of the several States 4th Circuit Court of Appeals

---

[13] *Insurance Corp. of Ireland, Ltd, et al., v. Compagnie des Bauxites de Guinee,*

are precluded from adjudicating "administrative or legislative functions which are not properly judicial * * * Such legislative or administrative jurisdiction, it is well settled, cannot be conferred on this court either directly or by appeal [and] without real parties or a real case or administrative or legislative issues or controversies."[14]

    b.  But this is not true with the USDC within the District of Columbia and the Territories; and, the District of Columbia Court of Appeals within the District of Columbia as held in *Postum Cereal Co. Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701 (1926).

## F.  Leyshon's Personal Jurisdiction and Status.

    a. Personal Jurisdiction can be waived but Leyshon did not knowingly or intentionally waive his personal Jurisdiction.  See *Insurance Corp. of Ireland, Ltd, et al., v. Compagnie des Bauxites de Guinee*, 102 S.Ct. 2099, 2105 (1982); *Ruhrgass AG v. Marathon Oil Co. et al.*, 526 U.S. 574, 575 (1999) *in the Holding*, "**Personal jurisdiction,** too, is an **essential element of district court jurisdiction, without which the court is powerless to proceed to an adjudication.** *Employers Reinsurance Corp. v. Bryant,* 299 U.S. 374, 382 (1937);" *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 779 (2000).

    b.  Leyshon's Political Status, Citizenship and Allegiance is as a "citizen of

---

102 S.Ct. 2099, 2014 (1982)

[14] *Postum Cereal Co. Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701 (1926)

North Carolina" Recorded in Watauga County as evidenced in **Appendix 4—**

**Sworn Affidavit of Political Status, Citizenship, and Allegiance in the Public**

**Record Watauga County, North Carolina Doc. No: 639426 Bk 1818, Pages**

**244-247 ("A4—Leyshon Status"),** which the 4th Circuit Inquisitors shall take

judicial Notice of.

b. Leyshon's registered under the right of suffrage in North Carolina to vote

and this was accepted by the State of North Carolina as evidenced by **Appendix 5—**

**–Voter Registration in North Carolina as a Qualified Elector ("A5—Qualified**

**Elector),** which the 4th Circuit Inquisitors shall take judicial Notice of.

c. In the Independent Agency[15] Jurisdiction of the Tax Court of the United

States inquisition[16] using the Internal Revenue Laws enacted under the Plenary

---

[15] Revenue Act of 1924, ch. 234, § 900(a), (k), 43 Stat. 253, 336, 338; 1942, ch. 619, § 504(a), 56 Stat. 798, 957; *Kuretski v. C.I.R.,* 755 F.3d 929, 933 (D.C.Cir. 2013).

[16] *United States v. Goldsmith,* 272 F.Supp. 924, 927 (E.D. N.Y. 1967) "[M]ay not be diluted by denominating the Internal Revenue Service inquisition a civil proceeding."; *United States v. O'Shea,* 662 F.Supp.2d 535, (S.D. West Va. 2009) "Furthermore, the IRS possesses the "**power of inquisition**" to investigate possible unpaid tax liabilities, and its **inquisitory powers** need not be supported by probable cause that wrongdoing has occurred. *Powell,* 379 U.S. at 57, 85 S.Ct. 248; *see also United States v. Bisceglia,* 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975) ("The purpose of the [summons] statutes is not to accuse, but to inquire."). If the Government meets its burden of demonstrating that the summons was issued in good faith, "it is entitled to an enforcement order unless the **taxpayer** can show that the IRS is attempting to abuse the court's process." *Conner,* 434 F.3d at 680 (quoting *United States v. Stuart,* 489 U.S. 353, 353, 109 S.Ct. 1183,

Power of Congress for the District of Columbia in 26 U.S.C. 7491 the C.I.R. has

the burden of proof to establish that Leyshon is a "taxpayer" for either Subtitle A–

–Income Taxes or Subtitle B—Gifts and Estates, to wit:

(a) Burden shifts where **taxpayer** produces credible evidence.--

(1) General rule.--If, in any court proceeding, a **taxpayer** introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the **taxpayer** for any **tax imposed by subtitle A or B**, the **Secretary shall have the burden of proof with respect to such issue.**

d.  This personal jurisdiction has never been claimed to exist and has not

been entered into the record of the inquisional Tax Court, remembering that the

Courts of the United States are prohibited from making a determination that

Leyshon is a "taxpayer" in 28 U.S.C. § 2201.

## G.  Jurisdicitonal Standing to Sue or Appear in an Article III Court as the C.I.R. Pursuing Nonjudicial issues is Prohibited.

a.  The C.I.R. does not have Standing to Sue or appeal in a Court of the

United States arising under Article III § 2, 28 U.S.C. § 1331 or 28 U.S.C. § 1291—

Laws of the United States wherein the duties of a nonjudicial nature may not be

imposed upon judges holding office under Article III of the Constitution of the

---

103 L.Ed.2d 388 (1989)).

United States and the Executive or Legislature to interfere with the Article III Courts final judgments as the IRS changes the alleged amounts due and owing at will. This has been held in many decisions of the Supreme Court of the United States. See *Hayburn's Case*, 2 U.S. 408 (1792); *United States v. Ferreira*, 54 U.S. 40, 52-53 (1851); *Muskrat v. United States*, 219 U.S. 346, 353, 356 (1902); *Buckley v. Valeo*, 424 U.S. 1, 123 (1976); *Mistretta v. United States*, 488 U.S. 361, 385 (1989); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 217 *et. seq.* (1995); *Morrison v. Olson*, 487 U.S. 654, 677-78 (1988).

## H.    There is no Real Case or Controversy for the 4th Circuit To Take "Subject Matter Jurisdiction" of Arising Under Article III.

There is no real Case or Controversy for the 4th Circuit to take "subject matter jurisdiction" of arising under Article III including the mandatory injury, which does not exist.

Will Leyshon be afforded the same constitutional protections that were afforded the Clintons in *Clinton v. Klayman*, 9-15-cv-80388 S.D.Fla., wherein the C.I.R. does not meet the Case and Controversy mandatory requirements arising under Article III.

In the very recent case on standing to sue is evidence in *American Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2nd Cir. 2015 [May 7th]), to wit

> We recognize that "'[n]o principle is more fundamental to the judiciary's proper role in our system of government than the **constitutional limitation of federal-court jurisdiction to actual**

cases or controversies.' "*Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1146 (2013), quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (alteration in original). In order to meet that requirement, plaintiffs must, among other things, **establish that they have standing to sue.** *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "Standing under Article III of the Constitution **requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.**" *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *see also Amnesty Int'l*, 133 S.Ct. at 1147 (collecting cases). The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Amnesty Int'l*, 133 S.Ct. at 1147, quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (emphasis in original). We remain mindful that the "'standing inquiry has been especially rigorous when reaching the merits of [a] dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional'."

## II.  Statement of the Facts.

There are no Facts from the Inquisitorial Tax Court of the United States that have meaning as there is no sworn testimony, no clear and convincing evidence and not first hand knowledge of any facts that Leyshon is a "taxpayer" under the Laws of the United States.

## III.  Statement of the Case.

This Case is about the fact that the "internal revenue laws" are interpreted and applied[17] in the Tax Court of the United States with no judicial determination[18]

---

[17]*Kuretski v. C.I.R.*, 755 F.3d 929, 943 (D.C.Cir. 2013) "**The Tax Court is in the business of interpreting and applying the internal revenue laws,** *see Freytag,*

in a non-Article III Court. The "Internal Revenue Laws" morph from an "inquisitorial" proceeding into a bona fide Article III Court of the United States as it lacks "subject matter jurisdiction" and there is no Case or Controversy arising under Article III. See *Hayburn's Case*, 2 U.S. 408 (1792); *United States v. Ferreira*, 54 U.S. 40, 52-53 (1851); *Muskrat v. United States*, 219 U.S. 346, 353, 356 (1902); *Buckley v. Valeo*, 424 U.S. 1, 123 (1976); *Mistretta v. United States*, 488 U.S. 361, 385 (1989); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 217 *et. seq.* (1995); *Morrison v. Olson*, 487 U.S. 654, 677-78 (1988).

### IV. Summary of the Argument.

a. There is no "subject matter jurisdiction" on the record that arises under Article III § 2 and 28 U.S.C. § 1331 that can be bought up at any time and can't be waived by any party. There is no personal jurisdiction established concerning

---

501 U.S. at 891, 111 S.Ct. 2631, **not in the business of making those laws."**

[18] *Kuretski v. C.I.R.*, 755 F.3d 929, 943 (D.C.Cir. 2013, **"At the same time, the Supreme Court has recognized a "category of cases involving 'public rights' " that Congress can constitutionally assign to non-Article III tribunals.** *Id.* at 2610 (quoting *Northern Pipeline*, 458 U.S. at 67, 102 S.Ct. 2858 (plurality opinion)). **The "public rights" category comprises disputes that " 'could be conclusively determined by the Executive and Legislative Branches' " without judicial intervention.** *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 589, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (quoting *Northern Pipeline*, 458 U.S. at 68, 102 S.Ct. 2858).?

Leyshon to date  that he is a "taxpayer" and that there is "relationship between the government and the "taxpayer" that gives rise to "public rights.[19]"

      b.  The C.I.R. has no standing to enter into the 4th Circuit Court of Appeals.

## V.  Argument.

## A.  The Jurisdiction Of The Federal United States District Courts and Of the Courts of Appeals Within the Territorial Boundaries of the several States Are Prohibited From Adjudicating Non-judicial issues, But the United States District Courts and Appeals Court in the District of Columbia Can Adjudicate Article I.

The United States District Court and the Court of Appeals within the District can adjudicate non-judicial issues under the Authority of Article I, section 8, clause 17.  This is evidenced in *Keller v. Potomac Electric Power Co. Inc.*, 262 U.S. 428, 442-444 (1923), to wit:

> **By the Constitution (clause 17, section 8, article 1) Congress is given** power **'to exercise exclusive legislation in all cases whatsoever, over'** the District of Columbia. This means that as to the District Congress possesses, not only the power, which belongs to it in respect of **territory within a state, but the power of  the state as well. In other words, it possesses a dual authority over the District, and may clothe the courts of the District,** not only with the jurisdiction and powers of federal courts in the several states, but with such authority as a state may confer on her courts. *Kendall v. United States*, 12 Pet. 524, 619, 9 L. Ed. 1181. * * *
>
> **[444] Such legislative or administrative jurisdiction, it is well settled cannot be conferred on this court either directly or by appeal.** The latest and fullest authority upon this point is to be found

---

[19] *Kuretski v. C.I.R.*, 755 F.3d 929, 939, 940 (D.C.Cir. 2013)

in the opinion of Mr. Justice Day, speaking for the court in *Muskrat v. United States*, 219 U. S. 346, 31 Sup. Ct. 250, 55 L. Ed. 246. **The principle there recognized and enforced on reason and authority is that the jurisdiction of this court and of the inferior courts of the United States ordained and established by Congress under and by virtue of the third article of the Constitution is limited to cases and controversies in such form that the judicial power is capable of acting on them and does not extend to an issue of constitutional law framed by Congress for the purpose of invoking the advice of this court without real parties or a real case, or to administrative or legislative issues or controversies.** *Hayburn's Case,* 2 Dall. 410, note (1 L. Ed. 436); *United States v. Ferreira,* 13 How. 40, 52, 14 L. Ed. 42; *Ex parte Siebold*, 100 U. S. 371, 398, 25 L. Ed. 717; *Gordon v. United States*, 117 U. S. 697, appendix; *Baltimore & Ohio R. R. Co. v. Interstate Commerce Commission*, 215 U. S. 216, 30 Sup. Ct. 86, 54 L. Ed. 164.

Of course if the 4th Circuit arise only under the limited jurisdiction of federal courts imposed by Article III § 2 and are only giving the appearance of the "characteristics" of an Article III Court as found in the District of Columbia by remaining *sub silentio* when there is a mandated duty to validate *de novo* the "subject matter jurisdiction" before proceeding with all cases or controversies[20] exercising the judicial Power of the United States authorized arising under Article III; but in reality the 4th Circuit Inquisitors are adjudicating the Article I "public rights" doctrine under Article I Section 8 clause 17 of the "Internal Revenue Laws."

The **4th Circuit Inquisitors with attempting to confine Leyshon to the**

---

[20] *Insurance Corp. of Ireland, Ltd, et al., v. Compagnie des Bauxites de Guinee,* **102** S.Ct. 2099, 2014 (1982).

24

**"Informal Briefing"** as though they are within the District of Columbia with administrative or legislative functions which is prohibited in all United States District Courts within the several States and all Court of Appeals by *stare decisis*, precedent and Article III as pronounced in *Postum Cereal Co. Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701 (1926), to wit:

> The distinction between the jurisdiction of this court which is confined to the hearing and decision of cases in the **constitutional sense and that of administrative action and decision, power for which may be conferred upon courts of the District is shown in the case** of *Keller v. Potomac Electric Company*, 261 U. S. 428, 440, 442, 443, (1923). There it is pointed out that, while Congress in its constitutional exercise of exclusive legislation over the District may clothe the courts of the District, not only with the jurisdiction and powers of the federal courts in the several states, but also with such authority as a state might confer on her courts (*Prentis v. Atlantic Coast Line Company*, 211 U. S. 210, 225, 226, (1908)), and **so may vest courts of the District with administrative or legislative functions which are not properly judicial, <u>it may not do so with this court, or any federal court established under article 3 of the Constitution.</u>** Of the jurisdiction of this court, we said, at page 444 of 261 U. S. (43 S. Ct. 449):

> '**Such legislative or administrative jurisdiction, it is well settled, cannot be conferred on this court either directly or by appeal.** The latest and fullest authority upon this point is to be found in the opinion of Mr. Justice Day, speaking for the court in *Muskrat v. United States*, 219 U. S. 346 (1902). The principle there recognized and enforced on reason and authority is that the jurisdiction of this court and of the inferior courts of the United States ordained and established by Congress under and by virtue of the third article of the Constitution is limited to cases and controversies in such form that the judicial power is capable of acting on them, and does not extend to an issue of constitutional law framed by Congress for the purpose of invoking the advice of this court **<u>without real parties or a real case</u>**, or **<u>to administrative or legislative issues</u> <u>or controversies.</u>**

The use of the "Informal Briefing" by the 4th Circuit Inquisitors is in conflict and absolute antithetical to the holding in the Decisions of the Supreme Court of the United States wherein the Federal Courts within the Territorial Boundaries of the several States are courts of limited jurisdiction arising under Article III § 2 Clause 1 of the Constitution of the United States exercising the judicial Power of the United States to all Cases, in Law and Equity wherein the lower Federal Courts are further limited even further which is **inflexible and without exception on subject-matter jurisdiction;** and, the issue of subject-matter jurisdiction can be raised at any time; and, the subject-matter jurisdiction must be on the record. The subject-matter jurisdiction arising under Article III does NOT appear in the record in the Tax Court of the United States or 4th Circuit to date. In *Kuretski v. C.I.R.*, 755 F.3d 929 (D.C. Cir. June 20, 2014), which this Court shall take judicial Notice thereof that delineated with great specificity the issues of "public rights" doctrine, the "internal revenue laws," the "Internal Revenue" and "Taxation" that are all clothed within the plenary Power of the Congress for "subject-matter jurisdiction" adjudication only in the Federal Courts in the District of Columbia and Territories. The Appellant did raise the issues of subject-matter jurisdiction it attempting to get the 4th Circuit Inquisitors to at least grant first the Formal Briefing to Leyshon citing *Postum Cereal Co, Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701

26

(1927) and *Bowsher v. Synar*, 478 U.S. 714, 761 (1986) that the 4th Circuit Court is not located with the District of Columbia

Leyshon is relying upon the many decisions of the Supreme Court of the United States but one of many on-point Decisions of the Supreme Court of the Untied States that "subject matter jurisdiction" must be on the Record and can't be waived as held in *Insurance Corp. of Ireland, Ltd, et al., v. Compagnie des Bauxites de Guinee*, 102 S.Ct. 2099, 2014 (1982), to wit:

> **Federal courts are courts of limited jurisdiction.** The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. **Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction.** Again, this reflects the **constitutional source of federal judicial power:** Apart from this Court, that power only exists "**in such inferior Courts as the Congress may from time to time ordain and establish**." Art. III, § 1.
>
> **Subject-matter jurisdiction, then, is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign.** Certain legal consequences directly follow from this. **For example, no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant,** *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), principles of estoppel do not apply, *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541– 542, 95 L.Ed. 702 (1951), **and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings**. Similarly, a court, including an appellate court, **will raise lack of subject-matter jurisdiction on its own motion.** "**[T]he rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, which**

27

**requires this court, of its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record**." *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884), **FN9.**

> **FN9**. A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal. See *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).

The Subject Matter jurisdiction is an Article III as well as statutory, requirement functions as a restriction on federal Power.   See also *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433 (1989); *Omni Capital Intern., Ltd, v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 480 (4th Cir. 2005).

No Action of the Parties can confer or waive subject matter jurisdiction.  See also *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998); *Finey v. United States*, 490 U.S. 545, 559 FN3 (1989);  *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 480 (4th Cir. 2005);   *Orquera v. Ashcroft*, 357 F.3d 413, 416 (4th Cir. 2003); *New Horizon of New York LLC v. Jacobs*, 231 F.3d 143, 150 (4th Cir. 2000); *Biggs v. Meadows*, 66 F.3d 56, 60 4th

Cir. 1995); *United States v. Clark*, 865 F.2d 1433, 1441 (4ᵗʰ Cir. 1989).

## B.    *Stare Decisis* and Precedent Binds the USDC and the 4ᵗʰ Circuit on Jurisdiction.

It is well settled that the *stare decisis*, precedent and jurisdiction arising under Article III bind the USDC in North Carolina and the 4ᵗʰ Circuit on all Cases and Controversies arising Article III jurisdiction prohibiting all non-judicial Article III issues, *i.e.*, all Article I jurisdictional issues being limited strictly to Courts within the District of Columbia that adjudicates non-judicial Article III issues.

"*Stare decisis* is the preferred course because it promotes the evenhanded, predictable and consistent development of legal principles, fosters reliance on judicial decisions, contributes to the actual perceived integrity of the judicial process" *Payne v. Tennessee*, 501 U.S. 808, 827-828 (1991)[21]; and, [held] "[B]y *stare decisis* doctrine, ensures that the law will not merely change erratically, but will develop in a principled and intelligible fashion" * * * "That doctrine permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact." *Vasquez v.*

---

[21] *Hohn v. United* States, 524 U.S. 236 (1998); *Johnson v. United* States, 135 S.Ct. 2551, 2563 (2015); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997); *United States v. Cardales-Luna*, 633 F.3d 731, 735 (1st Cir. 2011); *McMellon v. United States*, 4th Cir. 2004).

*Hillery*, 474 U.S. 254, 254, 265-266 (1986)[22]; and, [held] @ 164 *"Stare decisis* compels the Court to adhere to that interpretation absent some "special justification" not to do so" @172 "The Court has said often and with great emphasis that "the doctrine of *stare decisis* is of fundamental importance to the rule of law."" "[I]t is indisputable that *stare decisis* is a basic self-governing principle within the Judicial Branch, which is entrusted with the sensitive and difficult task of fashioning and preserving a jurisprudential system that is not based upon "an arbitrary discretion."" *Patterson v. McLean Credit Union*, 491 U.S. 164, 164, 172 (1989); and, "Considerations in favor of *stare decisis* are at their[23] in cases involving property and contract rights, where reliance interests are involved." [additional Supreme Court case cites omitted] *Payne v. Tennessee*, 501 U.S. 808, 828 (1991)[FN Omitted] "[I]n most matters it is more important that the applicable rule of law be settled than that it be settled right" *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406 (1932) (*Brandeis, J., dissenting*); "The doctrine of *stare decisis* ... has only a limited application in the field of constitutional law." *St. Joseph Stock Yards Co. v. United States,* 298 U.S. 38, 94 (1936) (Stone and Cardozo, JJ., concurring in result); and, "Adherence to "our precedent-based

---

[22] *Vasquez v. Hillery*, 474 U.S. 254, 265 (1986).

[23] *Pearson v. Callahan*, 555 U.S. 223, 233 (2009); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).

system of justice places a premium on finality, stability, and certainty in the law...." *Id.* citing *Hubbard v. United States,* 514 U.S. 695, 711, (1995) in *Arewcibo Community Health Care, Inc. v. Commonwealth of Puerto Rico*, 270 F.3d 17 (1st Cir. 2001); "And we have often recognized that in just those contexts—"cases involving property and contract rights"—considerations favoring *stare decisis* are "at their acme." *Kimble v. Marvel Entertainment,* 135 S.Ct. 2401 [held @ 2404], 2410 (2015); and, "Fidelity to precedent—the policy of ***stare decisis*—is vital to the proper exercise of the judicial function . . . For these reasons, we have long recognized that departures from precedent are inappropriate in the absence of a "special justification.**" *Arizona v. Rumsey,* 467 U.S. 203, 212, (1984)" *Citizens United v. Federal Election Commission*, 558 U.S. 310, 377 (2010); and, "[E]ven in constitutional cases, the doctrine carries such persuasive force that we have always required a departure from precedent to be supported by some 'special justification.' *United States v. International Business Machines Corp.,* 517 U.S. 843, 856, (1996)" *Dickerson v. United States*, 530 U.S. 426, 433 (2000); "That doctrine [*stare decisis*], we have stated, is a "foundation stone of the rule of law." *Michigan v. Bay Mills Indian Community,* 134 S.Ct. 2024, 2036, (2014)." *Harris v. Quinn*, 134 S.Ct. 2618, 2651 (2014); "Considerations of *stare decisis* have special force in the area of statutory interpretation . . . *Patterson v. McLean Credit Union,* 491 U.S. 164, 172–173, (1989)." *Hohn v. United States*, 524 U.S. 236, 251,

252 (1998)

In *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 107 (1993), to wit;

> **[T]he province and duty of the judicial department to say what the law *is*,** " *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) (emphasis added)--not what the law *shall be.*

> Fully retroactive decisionmaking was considered a principal distinction between the judicial and the legislative power: "[I]t is said that that which distinguishes a judicial from a legislative act is, that the one is a **determination of what the existing law is in relation to some existing thing already done or happened**, while the other is a predetermination of what the law shall be for the regulation of all future cases." T. Cooley, Constitutional Limitations.

In *Anastosoff v. United States*, 223 F.3d 898 (8th Cir. 2000), to wit:

> This discretion is completely inconsistent with the doctrine of precedent; **even in constitutional cases**, courts "**have always required a departure from precedent to be supported by some 'special justification**.' " *United States v. International Business Machines Corp.,* 517 U.S. 843, 856, 116 S.Ct. 1793, 135 L.Ed.2d 124 (1996), quoting *Payne v. Tennessee,* 501 U.S. 808, 842, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (Souter, J., concurring).

## C. Only The Supreme Court Can Overrule One Of its Precedents Including Jurisdiction.

In *Thurston Motor Lines v. Rand*, 460 U.S. 533, 535 (1983) (per curiam) "Needless to say, **only this Court may overrule one of its precedents**.[24]" In *United States v. Barnett*, 578 F.3d 600, 602 (8th Cir. 2009) ""[O]nly [the Supreme Court] may overrule one of its precedents." *Thurston Motor Lines v. Rand*, 460

---

[24] *Hodgson v. State of Minnesota*, 646 F.Supp. 756, 774 (D.C.Minn. 1986).

U.S. 533, 535 (1983)."

In *Wallace v. Jaffree*, 432 U.S. 38, FN 26, to wit:

"**Federal district courts and circuit courts are bound to adhere to the controlling decisions of the Supreme Court**. *Hutto v. Davis*, [454 U.S. 370, 375, 102 S.Ct. 703, 706, 70 L.Ed.2d 556] (1982).... Justice Rehnquist emphasized the importance of precedent when he observed that '**unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be.**' *Davis*, [454 U.S. at 375, 102 S.Ct., at 706]. *See Also, Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, [460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260] (1983) (the Supreme Court, in a per curiam decision, recently stated: 'Needless to say, **only this Court may overrule one of its precedents**')." 705 F.2d, at 1532.

In *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 486 (1989) "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions;" and, in *Harmelin v. Michigan*, 501 U.S. 957, 963 (1991) "We thought that result so clear in light of *Rummel* that our *per curiam* opinion said the Fourth Circuit, in sustaining the constitutional challenge, "could be viewed as having ignored, consciously or unconsciously, the hierarchy of the federal court system," which could not be tolerated "**unless we wish anarchy to prevail;**" and, "But unless we wish anarchy to prevail within the federal judicial system, a **precedent of this Court must be followed by the lower**

federal courts no matter how misguided the judges of those courts may think it to be." [FN7 Omitted' *Hutto v. Trenton*, 454 U.S. 370, 374 (1991).

## D.  There is NO Case or Controversy in the USDC.

The USDC court in arising under Article III in the Federal Courts in the territorial boundaries of the several States does not sit as "conservators over public rights," and further this is no "controversy" that been plead in the USDC Case.

In *State of Georgia v. Stanton*, 73 U.S. 50, 60 (1867), to wit:

> Counsel must show a controversy with a party, **not a controversy with the law**; **they must show an individual right**, **not a general public right**. **This court does not sit as conservators over public rights**, and as such to guard them in the very beginning against the execution of an obnoxious law. **It sits only in a controversy after a controversy has arisen.**

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 561 (1992) the party invoking federal jurisdiction has the burden of establishing three elements:  (1) an "injury in fact" . . . which is (a) concrete and particularized and (b) actual or imminent, not conjectural" or "hypothetical;" and, (2) "there must be a casual connection between the injury and the conduct complaint of;" and, (3) it must "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Will the 4th Circuit Inquisitors hold as the same mandatory constitutional standards as was afforded to the Clintons in *Clinton v. Klayman*, 9-15-cv-80388 S.D.Fla.?

From *Clinton, supra,* Docket 96—ORDER dismissing the Case is this excerpt,

> Federal courts are of limited jurisdiction and are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution. *Lance v. Coffman,* 549 U.S. 437, 439 (2007). Article III of the Constitution confines the "judicial Power" of the United States to "**Cases**" and "**Controversies**." Constitution of the United States Article III, § 2. Federal courts "have always taken this to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 102 (1998). "The 'irreducible constitutional minimum of standing' contains three requirements": **(1)** "an 'injury in fact' - a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent, not 'conjectural' or 'hypothetical;'" **(2)** causation - a fairly traceable connection between the plaintiffs injury and the complained-of conduct of the defendant;" and **(3)** "redressability - a likelihood that the requested relief will redress the alleged injury." Id. at 102-03 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)); see also *Vermont Agency of Natural Res. v. US. ex rel. Stevens,* 529 U.S. 765, 771 (2000); *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990). Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the **question of standing**. Thus, the Supreme Court has held that "**the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.**" *Warth v. Seldin,* 422 U.S. 490, 499 (1975). In addition, "federal courts have abjured appeals to their authority which would convert the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Valley Forge Christian Coll. v. Americans United/or Separation of Church & State, Inc.,* 454 U.S. 464, 473 (1982) (quoting *United States v. Students Challenging Regulatory Agency Procedures* (SCRAP), 412 U.S. 669, 687 (1973)). Therefore, "even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Article III, the court has refrained from adjudicating 'abstract questions of wide public significance,' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative

branches." *Id.* at 4 74-75. Finally, the law presumes that "a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citation omitted).

### E.    Jurisdiction of USDC is "Public Rights" Doctrine Under the Plenary Power of Congress.

The **"Laws of Congress**," *i.e.*, "Acts of Congress," *i.e.*, "internal revenue laws" are used interchangeably where the issues are under the Plenary Power of Congress in either the District of Columbia or the Territories.  In *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 511 (1900) "[A]s the **laws of Congress** alone determine the matter of the disposal of the public lands[25], it follows that the question of law which are thus open for consideration are those arising under the **acts of Congress**."  See also *Landes v. Brant*, 51 U.S. 348, 364 (1850) (Public land); *Weems v. United States*, 217 U.S. 349, 386 (1910) (Territories – Philippines).

The **"Internal Revenue**," **"Taxation**" or "revenue from Imports" is under the **"public rights**" doctrine under the Plenary Power of Congress in the District of Columbia or the Territories.  This is pronounced in *Kuretski v. C.I.R.*, 755 F.3d 929, 939, 940 (D.C. Cir. 2014), to wit:

> At the same time, the Supreme Court has recognized a "category of cases involving **'public rights'** " that Congress can constitutionally

---

[25] Public Lands are under the plenary Power of Congress.

assign to non-Article III tribunals. *Id.* at 2610 (quoting *Northern Pipeline,* 458 U.S. at 67, 102 S.Ct. 2858 (plurality opinion)). The "**public rights**" category comprises disputes that "'**could be conclusively determined by the Executive and Legislative Branches'** " *without judicial intervention.* *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 589, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (quoting *Northern Pipeline,* 458 U.S. at 68, 102 S.Ct. 2858). The "**public rights doctrine** reflects simply a pragmatic understanding that, when **Congress selects a quasi-judicial method of resolving matters**" that could be decided with no judicial review, "the danger of encroaching on the judicial powers is reduced." *Id.*

Although the precise contours of the "**public rights**" doctrine are not fully formed, *see Stern,* 131 S.Ct. at 2610; *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 51 n. 8, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), it is "**settled**" that the category of **public rights** includes matters of "**internal revenue**" and "**taxation**," at least at the pre-collection stage. ***Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n,*** 430 U.S. 442, 450–51 & nn. 8–9, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977) (internal quotation marks omitted); *see Crowell v. Benson,* 285 U.S. 22, 50–51, 52 S.Ct. 285, 76 L.Ed. 598 (1932); ***Murray's Lessee v. Hoboken Land & Improvement Co.***, 59 U.S. 272, 284, 18 How. 272, 15 L.Ed. 372 (1856). **Congress therefore can constitutionally assign the adjudication of pre-collection tax disputes to non-Article III tribunals.** *See Samuels, Kramer & Co. v. Comm'r,* 930 F.2d 975, 992 (2d Cir.1991) ("The relationship between the government and taxpayer plainly gives rise to public rights and we have no doubt that the resolution of such disputes can be relegated to a non-Article III forum."), *abrogated on other grounds by Freytag,* 501 U.S. at 892, 111 S.Ct. 2631.

* * *

*Ibid @ 941,* That statement, if considered in isolation, could be construed to suggest that Tax Court judges exercise Article III powers. But the *Freytag* Court clarified that "**non-Article III tribunals ... exercise the judicial power of the United States,**" such that "**the judicial power of the United States is not limited to the judicial power defined under Article III.**" *Id.* at 889, 111 S.Ct. 2631 (citing *Am. Ins. Co. v. Canter,* 26 U.S. (1 Pet.) 511, 546, 7 L.Ed. 242 (1828)). **The Court therefore used the phrase "judicial power" in "an enlarged sense," not in the particular sense employed by**

**Article III.** *See Murray's Lessee,* 59 U.S. at 280 ("**judicial act**" in "**an enlarged sense**" encompasses "**all those administrative duties the performance of which involves an inquiry into the existence of facts and the application to them of rules of law**");

## F. Tax Court of the ONLY Remedy Offered by Congress and It Adjudicates ONLY "Public Rights" Doctrine.

a. The "venue' and the "jurisdiction" of the Tax Court is under the "public rights" doctrine and this is well-settled that the Tax Court adjudicates "public rights" as evidenced in *Samuels, Kramer & Co. v. C.I.R.,* 930 F.2d 975, 992 (2nd Cir. 1991), to wit:

> The **Tax Court is the classic example of a forum that adjudicates "public rights**." The relationship between the government and taxpayer plainly gives rise to public rights and we have no doubt that the resolution of such disputes can be relegated to a non-Article III forum. *Crowell,* 285 U.S. at 50–51, 52 S.Ct. at 292; *Bakelite,* 279 U.S. at 450–51, 49 S.Ct. at 413; *Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 284, 15 L.Ed. 372 (1856).

b. The Tax Court adjudicates "federal rights" under the "public rights" doctrine as evidenced in *Klien v. United States,* 94 F.Supp.2d 838 (S.D.Mich. 2000) citing *Samuels, Kramer & Co. v. C.I.R.,* 930 F.2d 975, 992 (2nd Cir. 1991), to wit:

> First, the vast majority of cases cited by the government are decisions by the Tax Court. Despite performing exclusively judicial functions akin to those of an Article III federal district court (albeit, solely in the **realm of taxation**), the **Tax Court is an Article I court.** *See Freytag v. Commissioner of Internal Revenue,* 501 U.S. 868, 891–92, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991). Tax Court judges lack life tenure; their salaries may be diminished; and they may be removed by the President for cause. *Id.* at 912, 111 S.Ct. 2631 (Scalia, J.

38

concurring). **The Tax Court is a classic example of a congressionally created forum within the executive branch designed to adjudicate "public rights."** *Samuels, Kramer & Co. v. Commissioner of Internal Revenue,* 930 F.2d 975, 991–92 (2d Cir.1991) "Public rights" are: [t]hose rights that arise "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments."
* * * * * *
**The relationship between the government and taxpayer plainly gives rise to public rights** and we have no doubt that the resolution of such disputes can be relegated to a non-Article III forum.
The "public rights" doctrine rests on the premise that **any matters subject to adjudication in Article I forums could have been conclusively determined by the executive or legislative branches in the first instance** ... Given the fact intensive nature of tax disputes, resolution of such claims would ordinarily be left to the executive.
* * * * * *
**[L]egislative courts, such as the Tax Court, share many of the characteristics of administrative agencies. We believe that the work performed by legislative courts and adjudicatory agencies cannot be distinguished. Both are bodies created by Congress under Article I to adjudicate federal rights** and both lack the requisites of Article III status. From the perspective of Article III, there is no difference in constitutional principle between legislative courts and administrative agencies ... Despite several differences in both appearance and operation, their work cannot be functionally or theoretically distinguished.

Leyshon has his unalienable rights secured in the Constitution of North Carolina  Leyshon is NOT a "citizens of the United States" under 14 Stat. 27 memorialized in the 14th Amendment that are using the "public rights" doctrine with no remedies in any constitutional Court.

The question arises where is the right or privilege of voting arise under: The Constitution of the United States or the constitution of one of the several States? The answer is found in *United States v. Anthony*, 24 F.Cas. 829, 829, 830 (Cir.Ct. N.D.N.Y. 1873), to wit:

> The thirteenth, fourteenth and fifteenth amendments were designed mainly for the protection of the newly emancipated negroes, but full effect must, nevertheless, be given to the language employed.
>
> * * *
>
> The **right of voting,** or the privilege of voting, is a right or privilege **arising under the constitution of the state**, and not under the constitution of the United States; and second, that a right of the character here involved is not one connected with **citizenship of the United States**.
>
> * * *
>
> [I]f rights of a citizen are thereby violated, they are of that fundamental class, **derived from his position as a citizen of the state, and not those <u>limited rights belonging to him as a citizen of the United States</u>**; and such was the decision in *Corfield v. Coryell*, 6 F.Cas. 546, 551, 552 (1823).
>
> In *Kineen v. Wells*, 11 N.E. 916, 918, 919 (Sup.Jud.Ct.Mass. 1887), to wit:
>
> If the legislature can impose certain restrictions upon one class of voters, and exempt another, what is the limit to its discretion?
>
> * * *
>
> The **right or privilege of voting is a right or privilege arising under the constitution of each state**, and **not under the constitution of the United States.** The voter is entitled to vote in the election of officers of the United States by reason of the fact that he is a voter in the state in which he resides. He exercises this right because he is entitled to by the laws of the state where he offers to exercise it, and not because he is a citizen of the United States. *United States v. Anthony*, 24 F.Cas. 829, 830 (Cir.Ct. N.D.N.Y. 1873).

In *Corfield v. Coryell*, 6 F.Cas. 546, 551, 552 (1823), a case the Circuit Court of the United States has described the privileges and immunities of the citizens of the several States in great detail including this excerpt to which some additional protections under fourteenth Amendment were overlaid but the fundamental right of the elective franchise is still posited in the constitution of one of the several States, to wit:

> [M]ay be mentioned as some of the particular privileges and immunities of citizens, which are clearly embraced by the general description of privileges **deemed to be fundamental**: to which may be added, the **elective franchise, as regulated and established by the laws or constitution of the state in which it is to be exercised.**

## VI. Conclusion.

As the C.I.R. has no standing to adjudicate "Internal Revenue Laws" in a bona fide Article III Court as there is no confirmed amount due and owing; and, there is no injury; and, the Tax Court is an "inquisitorial Court[26] with no

---

[26] *United States v. Goldsmith*, 272 F.Supp. 924, 927 (E.D.N.Y. 1967) "The right of the witness to claim the privilege, therefore, may not be diluted by denominating the Internal Revenue Service inquisition a civil proceeding."; *United States v. O'Shea*, 662 F.Supp.2d 535, 539 (S.D.W.Va. 2009) "Furthermore, the IRS possesses the "**power of inquisition**" to investigate possible unpaid tax liabilities, and its inquisitory powers need not be supported by probable cause that wrongdoing has occurred. *Powell*, 379 U.S. at 57, 85 S.Ct. 248; *see also United States v. Bisceglia*, 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975) ("The purpose of the [summons] statutes is not to accuse, but to inquire."). If the Government meets its burden of demonstrating that the summons was issued in good faith, "it is entitled to an enforcement order **unless the taxpayer** can show that the IRS is attempting to abuse the court's process." *Conner*, 434 F.3d at 680

constitutional path or means to enter into a bona fide Article III Court in the several States.

And further, Leyshon has not been determined to be a "taxpayer." See FN 26, *supra.*

Leyshon can only hold out of the slimiest hope that there are some 4th Circuit Inquisitors that will be bound by the Constitution of the United States, the Bill of Rights and the Laws of the United States and rule within their Authority granted by the Constitution of the United States. Judge Hanen in USDC S.D. of Texas ruled within his constitutional Authority in Case 1-14-cv-254 in Docket 145 that was upheld by 5th Circuit Court Judges Smith and Elrod upholding Judge Hanen. Leyshon would hope that there are some constitutional judges in the 4th Circuit Court of Appeals that will rule within the bounds of the Constitution of the United States.

This instant Case should be dismissed for lack of subject matter jurisdiction as the 4th Circuit is prohibited from adjudicating "Internal Revenue Laws" arising under Article III.

This Court should also render any other judgment in accord with the Constitution of the United States and the Constitution of North Carolina.

---

(quoting *United States v. Stuart,* 489 U.S. 353, 353, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989))."

/s/  Curtis Edwin Leyshon

Case Number  No. 15-2020

## Certificate of Compliance Pursuant to Fed. R. App. P. 32(a)(7)C) and Circuit Rule 32-1.

I certify that one copy of the Appellant's Brief  with one copy of the

Appendix were mailed to the 4th Circuit Court of Appeals and one copy of

the Appellant's Brief and one copy of the Appendix were mailed to the U.S.

Department of Justice; and, all were mailed First Class United States Postal

Service to the following Parties on November 28th, 2015, to wit:

**Opposing Counsel**
Clint Aaron Carpenter
U.S. Department of Justice
Tax Division
P.O. Box 502
Washington, D.C.  20044
202-514-4346 Phone
202-514-8456 Fax

**4th Circuit Court of Appeals**
Patricia S. Connor, Clerk of the Court
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517
804916-2700 Phone

I also certify that the number of words is 13,801 in 42 pages in Times

Roman size 14 points proportionately spaced in the Appellate Brief in

compliance with the 4th Circuit Rules.

/s/ Curtis Edwin Leyshon